UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CASILLO COMMODITIES ITALIA S.P.A.         CIVIL ACTION

v.                                         NO. 16-16612

M/V LONG CHEER, her engines,               SECTION "F"
tackle and appurtenances, etc.,
*in rem*, and LONG CHEER SHIPPING CO., LTD.,
*in personam*


ORDER AND REASONS

Before the Court is Long Cheer Shipping Co., Ltd.'s motion to vacate the arrest and attachment of the M/V LONG CHEER, to cancel security, to dismiss plaintiff's lawsuit, and to award wrongful seizure damages. For the reasons that follow, the motion is GRANTED in part (as to the request to vacate arrest and attachment, cancel security, and dismiss the lawsuit) and DENIED in part (as to the request for wrongful seizure damages).

**Background**

This case arises out of the delivery of approximately 15,000 metric tons of alleged wet and moldy Mexican white corn carried aboard the M/V LONG CHEER on a voyage from Mexico to Puerto Cabello, Venezuala.

1

Casillo Commodities Italia S.P.A. alleges that it voyage chartered the M/V LONG CHEER for the delivery of approximately 30,000 metric tons of Mexican white corn sold to the Corporation de Abastecimiento y Servicios Agricolas S.A. on or about September 12, 2016. The cargo was loaded in Mexico, and clean bills of lading were issued and signed by the master of the M/V LONG CHEER, attesting to the good condition of the cargo. The vessel arrived in Venezuela on October 28, 2016. Upon inspection of the cargo, Venezuelan authorities rejected two holds-worth of the corn as unfit for consumption due to its wet and moldy condition. When the M/V LONG CHEER arrived in this jurisdiction, to obtain security in aid of arbitration,[1] Casillo filed suit against the M/V LONG CHEER, *in rem*, and Long Cheer Shipping Co., Ltd., *in personam*, seeking arrest and attachment of the vessel under Rules B and C of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure for the defendant's alleged breach of the August 22, 2016 SYNACOMEX 90 Voyage charter party and for the unseaworthiness of the M/V LONG CHEER.[2] Pursuant to the Supplemental Admiralty Rules, the Court

---

[1] It is alleged that the voyage charter party mandates that any dispute must be subject to arbitration in London applying English law.
[2] Casillo did not own the cargo aboard the M/V LONG CHEER.

granted Casillo's motions for writ of attachment and issuance of warrant *in rem* on November 28, 2016.

Casillo seeks $4,485,000.00 in damages representing the loss of 15,000 metric tons of cargo valued at $299/metric ton. Casillo alleges that the defendants' breach of the charter party for failure to provide a seaworthy vessel and the master and crew's failure to transport and deliver the cargo in the same condition in which it was received gave rise to a maritime lien, supporting its Rule C allegations *in rem* against the M/V LONG CHEER. Casillo also alleges that Long Cheer's breach of the charter party gave rise to a breach of contract claim, supporting its Rule B allegations *in personam* against Long Cheer Shipping Co., Ltd. Casillo attached three exhibits to the verified complaint: the unsigned charter party; the Casillo/CASA Sale Recap; and the bill of lading.

On November 30, 2016, Long Cheer issued a letter of undertaking in the amount of $5,400,000.00 securing Long Cheer's appearance and for release of the M/V LONG CHEER. The vessel was released and sailed to Altamira, Mexico, where in December 2016, its cargo hatches were inspected. Long Cheer submits that -- notwithstanding the fact that it is named as a party to the unsigned charter party -- it was not a party to the voyage charter

party forming the basis of the arrest and attachment of the LONG CHEER and, accordingly, it now moves to vacate the arrest and attachment, to cancel security, to dismiss the lawsuit, and to award wrongful seizure damages.

I.

The special remedies and procedures available to admiralty and maritime claimants are governed by the Supplemental Rules for Admiralty or Maritime Claims, as part of the Federal Rules of Civil Procedure. Rule E(4)(f) of the Supplemental Rules for Admiralty and Maritime Claims calls for a prompt, post-attachment and post-arrest hearing in proceedings under Supplemental Rules B and C.[1]

---

[1] Supplemental Rule B concerns the attachment and garnishment procedure available in the context of *in personam* actions:

> (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required...are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property...in the hands of the garnishees named in the process.

> (b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that...the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment....

Pursuant to Supplemental Rule E(4)(f), a person claiming an interest in property arrested or attached is entitled to a hearing "at which the plaintiff shall be required to show why the arrest

---

Fed. R. Civ. P. Supp. R. B. See also In re Murmansk Shipping Co., No. 00-2354, 2001 WL 699530, at *2 (E.D. La. June 18, 2001)("[i]n considering the propriety of an attachment, the court's inquiry is limited to an assessment of whether the underlying complaint alleges an *in personam* action grounded in maritime law and whether the attachment was necessary to effectuate jurisdiction").

Supplemental Rule C, governing *in rem* actions, permits a plaintiff to initiate an *in rem* action against a vessel to enforce a maritime lien. See Fed. R. Civ. P. Supp. R. C(1)(a) (further providing that a party who may proceed *in rem* may also, or in the alternative, proceed *in personam* against any person who may be liable). Supplemental Rule C's technical requirements include:

> (2) Complaint. In an action *in rem* the complaint must:
>
> > (a) be verified;
> >
> > (b) describe with reasonable particularity the property that is the subject of the action; and
> >
> > (c) state that the property is within the district or will be within the district while the action is pending.
>
> (3) Judicial Authorization and Process.
>
> > (a) Arrest Warrant.
> >
> > > (i) The court must review the complaint and any supporting papers. If the conditions for an *in rem* action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel...

Fed.R.Civ.P. Supp.R. C.

or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f). To carry its burden, the arresting or attaching party must present sufficient evidence to show that there were "reasonable grounds" for attachment and that the arrest is supported by "probable cause." See Diesel Specialists, LLC v. M/V MOHAWK TRAVELER, No. 09-2843, 2009 WL 1036085, at *1 (E.D. La. April 17, 2009)(Engelhardt, J.); see also In re Murmansk Shipping Co., No. 00-2354, 2001 WL 699530, at *2 (E.D. La. June 18, 2001)(Vance, J.). The plaintiff has the burden of proof to show why the arrest or attachment should not be vacated. Fed. R. Civ. P. Supp. R. E(4)(f); Richardson Stevedoring & Logistics Services, Inc. v. Daebo Int'l Shipping Co. Ltd., No. 15-490, 2015 WL 1781712 (E.D. La. Apr. 20, 2015)(To carry its burden, the seizing party must present sufficient evidence to show probable cause for the arrest or attachment; otherwise, the arrest or attachment must be vacated.).

## II.

A. Rule C *in rem* arrest of the M/V LONG CHEER

Long Cheer first contends that Casillo cannot show that the vessel's arrest was supported by probable cause; because the only evidence that Long Cheer was a party to the voyage charter is that

6

Long Cheer is listed as such in the unsigned charter party, which indication has been discredited by more than one witness and is belied by a signed time charter party, Long Cheer submits that Casillo has failed to carry its burden to show that the arrest and attachment should not be vacated. The Court agrees.

An action *in rem* may be brought to enforce a maritime lien. Fed. R. Civ. P. Supp. R. C(1)(a). A maritime lien is a special property right in a vessel that gives the lien-holder priority over some claimants. See Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552, 556 (5th Cir. 2003). Because a maritime lien "arises in favor of the creditor by operation of law," it cannot be created by contract. See id.; see also Bominflot, Inc. v. THE M/V HENRICH S, 465 F.3d 144, 147 (4th Cir. 2006)("[a]dopted from civil law, maritime liens are stricti juris and cannot be created by agreement between the parties; instead, they arise by operation of law, often depending on the nature and object of the contract"). As the Fourth Circuit Court of Appeals has observed: "Because maritime liens confer such a powerful right, most nations -- including England -- limit or preclude their application." Bominflot, 465 F.3d at 147. A maritime lien on a vessel is a prerequisite to an action *in rem* under Supplemental Admiralty Rule C. Belcher Co. of Alabama, Inc. v. M/V MARATHA MARINER, 724 F.2d 1161, 1163 (5th Cir. 1984). Under U.S. maritime

law, an owner's breach of a charter party can create a maritime lien on the owner's vessel in favor of the charterer to whom the vessel owner has chartered the vessel. Bank One Louisiana N.A. v. M/V MR. DEAN, 293 F.3d 830, 836 (5th Cir. 2002).

When Casillo petitioned this Court to arrest the M/V LONG CHEER, it submitted the unsigned charter party in which it purported to contract with Long Cheer for the use of the M/V LONG CHEER. Considering Casillo's submission under Supplemental Rule C(3)(a)(i), "the conditions for an *in rem* action appear[ed] to exist" and the Court issued an order directing the clerk to issue a warrant for the arrest of the M/V LONG CHEER. Now that Long Cheer challenges the arrest for lack of probable cause, Casillo bears the burden of demonstrating that probable cause existed to arrest the vessel. Casillo fails to carry its burden. Uncontroverted evidence demonstrates that probable cause is lacking.

The only indication that Long Cheer was a party to the August 22, 2016 charter party is the unsigned charter party submitted by Casillo at the commencement of this suit. Long Cheer submits evidence indicating that Clipper Bulk, not Long Cheer, was a party to the charter party with Casillo. Long Cheer submits the declaration of Katrina Fan, one if its employees. Ms. Fan states

that Long Cheer entered into a time charter beginning on May 31, 2016 with Clipper Bulk Shipping Ltd. The time charter, which is also of record, between Long Cheer and Clipper Bulk for the M/V LONG CHEER was for a period of "about 11 to 13 months." Ms. Fan goes on to explain that Long Cheer was not a party to the voyage charter party in August 2016 and that Long Cheer "did not have an agreement to arbitrate any dispute with Casillo, as it had no contract with Casillo at any time." Ms. Fan says that Casillo's claim that Clipper Bulk acted as the manager for Long Cheer in the voyage charter party is incorrect. Instead, Clipper Bulk was the time charterer of the vessel at the time it (Clipper Bulk) entered into the voyage charter party with Casillo. As indicated in clause 39 of the Casillo voyage charter party, Ms. Fan notes that freight paid under the voyage charter was paid to Clipper Bulk and, as indicated in Article 46, Banchero Costa Progetti S.P.A. was the charter broker that prepared the Casillo voyage charter party. Ms. Fan states that Banchero has never acted as a charter broker for Long Cheer. Ms. Fan also states that Clipper Bulk had no authority from Long Cheer to claim that it was acting as its manager, nor did it have authority from Long Cheer to enter into the Casillo voyage charter on behalf of Long Cheer. She further states that Long Cheer has never had any contractual relationship with Casillo.

In addition to Ms. Fan's declaration, Long Cheer submits Bjorn Holte Jensen's declaration. Mr. Jensen is employed by Clipper Bulk and handles chartering activities on its behalf. Mr. Jensen states that Clipper Bulk time chartered the M/V LONG CHEER from Long Cheer for a period of 11 to 13 months beginning on May 31, 2016 and that, during and pursuant to the time charter, Clipper Bulk then sublet the vessel to Casillo a few months later when Casillo and Clipper Bulk entered into the voyage charter party on August 22, 2016. Mr. Jensen notes that the voyage charter party was never signed by the parties, but that "there are a series of emails confirming the intentions of Clipper Bulk and Casillo to enter into and bind themselves to" the voyage charter party. Mr. Jensen states that the voyage charter party erroneously states that Clipper Bulk was Long Cheer's manager because "Clipper Bulk never acted as a manager for Long Cheer[.]"

These two declarations,[3] along with the time charter agreement, are uncontroverted by Casillo. This evidence establishes that it was Clipper Bulk, and not Long Cheer, that sublet the M/V LONG CHEER to Casillo; Long Cheer was not a party to the August 22, 2016 voyage charter party with Casillo; Long

---

[3] That the declarations are unsworn is of no moment. Both declarations, which are signed under penalty of perjury, constitute competent admissible evidence.

Cheer had no agreement to arbitrate any dispute with Casillo; Long Cheer had no contractual agreement with Casillo in 2016. This evidence undermines Casillo's allegation that Long Cheer breached the voyage charter party. Because the evidence shows that Long Cheer was not a party to the voyage charter party, any breach of that agreement did not give rise to a maritime lien against the M/V LONG CHEER.[4] Vacatur of the arrest order is therefore appropriate.

B. Rule B *in personam* attachment of the M/V LONG CHEER

To support maritime attachment of property under this Rule, a plaintiff must satisfy filing, notice, and service requirements, and must also show that: (1) the plaintiff has a valid *prima facie* admiralty claim against the defendants; (2) the defendants cannot be found within the district; (3) the defendants' property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006),

---

[4] Long Cheer also contends that Casillo had no legal basis to claim a maritime lien or right to arrest the M/V LONG CHEER because the voyage charter party with Clipper Bulk specifically provides for the application of English law, which precludes maritime lien for breach of a charter party. Although this basis for vacatur of the arrest likewise appears sound, the Court need not reach it.

*abrogated on other grounds by* Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009). Once a defendant's property has been attached, and the defendant contests the attachment by moving to vacate the attachment under Rule E(4)(f), the attachment must be vacated unless the attaching party presents sufficient evidence to show probable cause for the attachment. See Austral Asia Pte Ltd. v. SE Shipping Lines Pte Ltd., No. 12-1600, 2012 WL 2567149 (E.D.La. July 2, 2012)(Engelhardt, J.)(citations omitted). However, courts are not obliged to make binding determinations of fact during Rule E(4)(f) hearings; rather, courts are called upon to "'merely hold[] that it is [or is not] likely' that alleged facts are true." Id. at *2 (noting that post-attachment hearings are "not intended to definitively resolve the dispute between the parties; instead, the district court makes a preliminary determination of whether reasonable grounds exist for the arrest").

Long Cheer submits that the Court must vacate the Rule B attachment because Casillo has failed to plead a prima facie case for *in personam* liability based on breach of contract. The Court agrees.

Casillo submitted only an unsigned voyage charter party purporting to name Long Cheer as a party to the contract in support

12

of its petition for attachment of the M/V LONG CHEER. But Long Cheer submits uncontroverted declarations by Long Cheer and Clipper Bulk that it was Clipper Bulk -- not Long Cheer -- that was the true party to the voyage charter party. Ms. Fan declares that Long Cheer was not a party to the voyage charter party as demonstrated by a time charter entered into between Long Cheer and Clipper Bulk. Mr. Jensen corroborates Ms. Fan's statements as well as the signed time charter arrangement, evidencing Long Cheer's time charter arrangement with Clipper Bulk, which was the party that -- months later -- entered into the voyage charter party with Casillo that is the predicate for the attachment.

Simply put, the evidence of record makes it unlikely that the facts alleged by Casillo are true. It is unlikely that there is a link between Long Cheer and Casillo; there appears to be no contractual relationship between Long Cheer and Casillo that would support a claim for breach of a maritime contract, which was the premise for Casillo's Rule B attachment of the M/V LONG CHEER and demand for security. Casillo has not persuaded the Court that it has a valid *prima facie* admiralty claim against Long Cheer. Accordingly, because the plaintiff has failed to sustain its burden of showing it has a valid *prima facie* admiralty claim against Long Cheer, the Rule B attachment of the M/V LONG CHEER shall be vacated.

III.

Long Cheer moves the Court to award wrongful seizure damages against Casillo and requests the Court to allow 14 days for it to submit evidence and a memorandum on the quantum of its damages, attorney's fees, and costs related to the wrongful arrest and attachment of the M/V LONG CHEER. Casillo counters that Long Cheer fails to establish that Casillo acted with bad faith, malice, or gross negligence especially where, as here, Long Cheer is actually named in the relevant charter party and Long Cheer characterizes its name appearing in that charter party as merely a "mistake." The Court agrees.

If the Court determines that a vessel arrest or attachment of was wrongful, damages may be recoverable. "Maritime law controls the substantive law of maritime seizures and requires that damages be awarded only on a showing of 'bad faith, malice, or gross negligence.'" <u>Marastro Compania Naviero v. Canadien MaritimeCarriers, Ltd.</u>, 959 F.2d 49, 53 (5th Cir. 1992)(The party pursuing a claim for wrongful arrest bears the burden of demonstrating that the arresting party acted with "bad faith, malice, or gross negligence."). "It also establishes that 'advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action for malicious

14

prosecution.'"  Id. (quoting Frontera Fruit Co. v. Dowling, 91 F.2d 293, 297 (5th Cir. 1937)).[1]  Finding that the plaintiff involved in the cargo seizure relied on the advice of counsel, the Fifth Circuit in Marastro affirmed the trial court's conclusion that no damages were warranted because the plaintiff acted in good faith and did not show a wanton disregard for the rights of the cargo owner or time charterer.  Id.  Where there is a "bona fide dispute over the validity of [the] lien" and "the parties could have legitimately and honestly believed the lien would stand up", the Fifth Circuit has held that a party has acted in good faith. See Cardinal Shipping Corp. v. M/S Seisho Maru, 744 F.2d 461, 475 (5th Cir. 1984).

Long Cheer seeks wrongful arrest damages on the ground that Casillo seized its vessel "knowing full well that it had no charter

---

[1]As the Fifth Circuit has observed:

> The reasons for the award of damages [for wrongful arrest] are analogous to those in cases of malicious prosecution.  The defendant is required to respond in damages for causing to be done through the process of the court that which would have been wrongful for him to do himself, having no legal justification therefor and acting in bad faith, with malice, or through wanton disregard of the legal rights of his adversary.

Frontera Fruit Co. v. Dowling, 91 F.2d 293, 297 (5th Cir. 1937).

party with [Long Cheer] or any legitimate legal basis to arrest or attach the M/V LONG CHEER." But Long Cheer, which bears the burden of persuading the Court that the arresting party acted maliciously or in a grossly negligent fashion, fails to offer support for its conclusory prayer. Long Cheer merely cites Mr. Jensen's statement in which he alludes to "a series of emails confirming the intentions of Clipper Bulk and Casillo to enter into and bind themselves to the Voyage Charter Party." Curiously, however, no such emails between Clipper Bulk and Casillo are submitted for the Court's review. And, by Long Cheer's own submission, again in Mr. Jensen's declaration, it is represented that Banchero Costa Progetti S.P.A., acting on Casillo's behalf, was the charter broker who prepared the voyage charter party; the one that mistakenly represents that Long Cheer is a party to the agreement when Clipper Bulk was actually the party to the agreement by virtue of its time charter with Long Cheer. On this record, it is conceivable that Banchero and Clipper Bulk emailed about their intentions with respect to the voyage charter party, which would ostensibly remove Casillo from the mistaken representation in the voyage charter party in which Long Cheer is listed as a party. That Casillo simply relied on the language of its voyage charter party naming Long Cheer to support its arrest of the M/V LONG CHEER does not rise to the level of bad faith.

Long Cheer falls short in its attempt to persuade the Court that Casillo acted in a malicious or grossly negligent manner in seeking to arrest and attach the M/V LONG CHEER on the basis of an agreement, brokered by Banchero on behalf of Casillo, which purported to name Long Cheer as party to the voyage charter party.

\*\*\*

Casillo has not shown that it had a charter party or contractual relationship with Long Cheer that could supply the factual predicate for this lawsuit or provide legal support for the Rule C arrest and Rule B attachment of the M/V LONG CHEER. As a result, the arrest and attachment of the M/V LONG CHEER must be vacated, the security issued by the West of England must be cancelled, and the plaintiff's lawsuit must be dismissed. However, because Long Cheer failed to carry its burden to show that Casillo acted in bad faith to arrest or attach the M/V LONG CHEER, it is not entitled to wrongful arrest damages.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motion to vacate the arrest and attachment of the M/V LONG CHEER, to cancel security, to dismiss the plaintiff's lawsuit, and for wrongful arrest damages is hereby GRANTED in part (insofar as Long Cheer seeks vacatur of the arrest and attachment of the M/V LONG CHEER, cancellation of security, and dismissal of

the plaintiff's lawsuit with prejudice) and DENIED in part (insofar as Long Cheer seeks wrongful arrest damages).

IT IS FURTHER ORDERED: that the motion to cancel security issued to plaintiff, Casillo Commodities Italia S.P.A., on behalf of defendant in the form of the 28 November 2016 Letter of Undertaking provided by the West of England Ship Owners Mutual Insurance Association (Luxumbourg) in the amount of $5,400,000 to release the M/V LONG CHEER from arrest and attachment is hereby GRANTED and Casillo Commodities Italia S.P.A. is ordered to immediately return the security for counsel for defendant.

New Orleans, Louisiana, June 28, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE